UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-137-GWU

JOSEPH WILDS,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-137  Joseph Wilds

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

09-137  Joseph Wilds

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

09-137  Joseph Wilds

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

5

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Joseph Wilds, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity and degenerative changes to his knees and ankles.  (Tr. 19).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Wilds retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 21-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 47-year-old man with a tenth grade education and work experience as a carpenter, could perform any jobs if he were limited to "light" level exertion and also had the following non-exertional restrictions.  (Tr. 472-3).  He: (1) could never climb ladders, ropes, and scaffolds; (2) could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; (3) was limited to no more than "frequent" pushing and pulling with the lower extremities; (4) needed to avoid concentrated exposure to full body vibration; and (5) needed to avoid hazards such as unprotected heights and dangerous machinery.  (Tr. 473-4).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 474-5).

09-137  Joseph Wilds

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Wilds alleged disability beginning July 9, 2006 due to a variety of physical problems, including an injury to his neck, back, and shoulders, and resulting headaches from an August, 2004 motor vehicle accident.  (Tr. 73).  He also described foot pain which made it difficult to stand or walk for more than a few minutes at a time, diabetes, high blood pressure and cholesterol, and diverticulosis. (Id.).

While the plaintiff submitted extensive medical records covering the period both before and after his alleged onset date, the ALJ noted that no treating or examining source provided functional restrictions or indicated that Mr. Wilds was completely disabled.  Dr. Tim Micek, an orthopedist who treated the plaintiff after his motor vehicle accident, placed temporary sedentary restrictions in October, 2004 (Tr. 135), but the plaintiff returned to work at his heavy carpenter job subsequently. The orthopedist diagnosed cervical neck pain of muscular origin, and a mild cervical tendon sprain.  (Tr. 133).  Mr. Wilds also had an extensive work-up for foot pain, with associated occasional numbness, but Dr. Thomas Cervoni found no evidence of polyneuropathy and described the plaintiff as having only a mild limp.  (Tr. 205). He listed an impression of tendonitis and a planovalgus deformity, and recommended that orthotics be made.  (Id.).  Another physician, Dr. Steve

8

09-137  Joseph Wilds

Lawrence, also found no evidence of diabetic neuropathy, and commented that the plaintiff's pain seemed rather vague and out of proportion to his findings. (Tr. 222). Dr. Lawrence referred Mr. Wilds to another physician, Dr. Kelly Cole, a specialist in arthritis. (Tr. 354). Dr. Cole noted that in addition to foot pain, Mr. Wilds described bilateral hand swelling and stiffness, and asserted that he was hardly even able to take care of his personal hygiene. (Id.). He also noted a history of negative nerve conduction studies. (Tr. 355). Objective testing such as a bone scan and sedimentation rate were only mildly abnormal. Dr. Cole found no evidence for fibromyalgia. (Tr. 356). Ultimately, after an essentially normal whole body bone scan and normal x-rays of the neck and lumbosacral spine (Tr. 429-31), however, he appeared to diagnose only mild degenerative joint disease and prescribed medication such as Neurontin and Celebrex. (Tr. 421).

Dr. Warren Chumley, a neurologist, examined the plaintiff in December, 2007 on referral from Dr. Cole. At the time, however, Mr. Wilds described his pain as only "three" on a scale of one to ten. There was decreased sensation to pain in the distal extremities, but motor, strength, and reflex examinations were normal. Dr. Chumley noted that an MRI of the cervical spine in September, 2007 showed minimal narrowing at the C4-C5 level, and an MRI of the lumbosacral spine showed mild right-sided narrowing at L4-L5. (Tr. 443). An MRI of the brain showed white matter lesions in the frontal lobes, but no symptoms suggestive of muscular

sclerosis.  (Tr. 433).  Dr. Chumley suggested an increase in the Neurontin dosage, and also prescribed a medication for symptoms of depression.  (Tr. 434).

As noted, none of these sources provided any specific functional restrictions. A state agency physician, Dr. M. Allen Dawson, signed a physical residual functional capacity assessment form on April 12, 2007 indicating that the plaintiff could perform medium level exertion with non-exertional restrictions generally consistent with the ALJ's hypothetical question. (Tr. 305-12).  The plaintiff objects to this report as providing substantial evidence for the ALJ's decision, however, based on two factors.  First, he asserts that Dr. Dawson limited the plaintiff to a greater exertional level than found by the ALJ.  While this is true, the fact that the ALJ gave the plaintiff the benefit of the doubt in determining his exertional level is hardly a reversible error, if it is any error at all.  Second, the plaintiff asserts that the assessment was actually completed by a state agency source, Paul Pearson, who is not a physician, and who then submitted it to Dr. Dawson for his "review/signature." (Tr. 304).  While this appears to be correct, there is no question that Dr. Dawson adopted the opinion as his own.  The plaintiff does not identify any regulation or case law making this impermissible.   Therefore, the essentially uncontradicted opinion of Dr. Dawson was substantial evidence to support the ALJ's decision.  Likewise, the opinion of state agency reviewing psychologist Ilze Sillers that the plaintiff did not have a "severe" mental impairment is uncontradicted.  (Tr. 289-90).  Even if the opinions of the state agency reviewers were invalid, the plaintiff

09-137  Joseph Wilds

has completely failed to otherwise show that he has any specific functional restrictions.

The plaintiff asserts that the ALJ committed error by failing to discuss medical records and opinion evidence from his treating chiropractor, John D. McClellan. The plaintiff correctly notes that Social Security Ruling (SSR) 06-03p provides guidelines for considering evidence from "other sources" which are not considered an "acceptable medical source" under the Commissioner's regulations set out at 20 C.F.R. §§ 404.1527 and 416.927.  SSR 06-03p indicates that under certain circumstances the opinion of a source such as a chiropractor may outweigh an opinion by an acceptable source, such as a physician.  However, the ruling goes on to state that " . . . the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when such opinions may have an effect on the outcome of the case*" (emphasis added).  In the present case, Dr. McClellan summarized the plaintiff's condition as being permanent and chronic but did not suggest that the plaintiff was disabled or give functional restrictions.  (Tr. 313). Rather, he stated that Mr. Wilds "has loss of motion from adhesions, scar tissue in his occipital cervical spine, thoracic spine, and right pelvis which limits his [activities of daily living] and ability to work."  (Id.).  There is nothing in the chiropractor's specific statement which is actually incompatible with the ALJ's residual functional

11

capacity finding.  Accordingly, it is difficult to discern how a discussion of the chiropractor's findings would have affected the outcome of the case.  Under these circumstances, the Social Security ruling was not violated.

The plaintiff also asserts that the ALJ's discussion of the plaintiff's subjective symptoms was slanted to avoid the mention of anything that was negative.  The ALJ noted that the plaintiff was able to mow his yard, take out the trash, occasionally go deer hunting on a family farm, could regularly attend church and serve as an usher, and performed minor household repairs.  (Tr. 22-3).  The plaintiff had also testified that he had difficulty performing his ushering duties at church and difficulty recovering from mowing the grass, factors not mentioned by the ALJ.  (Tr. 470-1). However, the ALJ had earlier noted the plaintiff's assertions that he could not stand for more than 30 minutes at a time or walk more than a few yards without stopping to rest.  (Tr. 22).  Therefore, while the ALJ did not recite every conceivable nuance of the plaintiff's testimony, he certainly recognized that the plaintiff was claiming he could not perform activities on a sustained basis.

Finally, the plaintiff requests a remand based on evidence submitted to the Appeals Council.  Dr. Chumley, the neurologist, stated in an office note on May 7, 2008, slightly after the ALJ's April 23, 2008 decision, that Mr. Wilds "appears to be fully disabled," unlikely to improve, and unlikely to ever be able to work again.  (Tr. 442). 42 U.S.C. § 405(g) provides that a remand for consideration of new evidence may be ordered "only upon showing that there is new evidence which is material

09-137  Joseph Wilds

and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  In this case, the plaintiff has not suggested any good cause for failing to obtain the physician's opinion earlier.  The Sixth Circuit has held that the fact that a report was prepared after the final administrative decision does not satisfy the good cause requirement.  <u>Oliver v. Secretary of Health and Human Services</u>, 804 F.2d 964, 966 (6th Cir. 1986).  Moreover, the new evidence is of dubious materiality, because the Commissioner is not required to give controlling weight to a physician's conclusory disability opinion.  20 C.F.R. §§ 404.1527(e); 416.927(e).  A remand for consideration of the new evidence is not warranted.

The decision will be affirmed.

This the 12th day of February, 2010.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

13